UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN WESLEY BEAN,

    Plaintiff,                                      Civil Action No. 15-CV-11989

vs.                                              HON. BERNARD A. FRIEDMAN

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on cross motions for summary judgment [docket entries 11 and 16]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying his application for Social Security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in December 2013 and issued a decision denying benefits in February 2014 (Tr. 75-88). This became defendant's final decision in April 2015 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the record de novo,

and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

At the time of his December 2013 hearing, plaintiff was 46 years old. He has completed two years of college and has work experience as a process server and motorcycle technician (Tr. 277). Plaintiff claims he has been disabled since July 2011 due to back and leg pain and acid reflux (Tr. 276). His insured status expired in June 2014 (Tr. 241, 249).

The ALJ found that plaintiff's severe impairments are "degenerative disc disease of the lumbar spine with central canal stenosis" (Tr. 80). The ALJ found that plaintiff cannot perform his past work, but that he has the residual functional capacity ("RFC") to perform

> sedentary work . . . except that [he] requires the ability to alternate between sitting and standing at will; provided, exercise of the option does not cause him to be off task for[] more than 10% of the workday. The claimant should never push or pull while standing. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally stoop, crouch, kneel, and crawl. The claimant should avoid all exposure to unprotected heights.

(Tr. 82.) A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could do certain unskilled sedentary jobs such as office clerk, reception and information clerk, and packer (Tr. 122-23). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and concluded that plaintiff is not disabled (Tr. 87-88).

Having reviewed the administrative record and the parties' briefs, the Court finds that the ALJ's decision in this matter is not supported by substantial evidence because her RFC

evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing. Additionally, the ALJ failed to adequately explain her finding that plaintiff is "not entirely credible" and "only partially credible" (Tr. 85, 86), and she did not explain why, in assessing plaintiff's RFC, she relied on the opinion of a consulting physician, Dr. Edmond, who did not opine on plaintiff's ability to sit, stand, walk, or concentrate.

The ALJ's RFC evaluation is flawed because it did not include any findings regarding plaintiff's obesity or medication side effects. Regarding the former, medical records during the relevant period show that plaintiff is approximately 6'-4" tall and weighed between 299 and 307 pounds (Tr. 276, 330, 341, 343, 348, 354, 420-25, 493, 571, 577). At 300 pounds, plaintiff's body-mass index ("BMI") was 36.5 (Tr. 330); at 307 pounds it was 37.4 (Tr. 341).[1]

Under defendant's regulations, an adult with a BMI of 30 or above is deemed to be obese. *See* SSR 02-1p. While obesity is no longer a "listed impairment," this Social Security ruling does require the ALJ to consider it at all steps of the sequential process while evaluating applicants for disability insurance benefits. *See id.,* Policy Interpretation ¶ 3 ("We will consider obesity in determining whether: The individual has a medically determinable impairment. . . . ; [t]he individual's impairment(s) is severe. . . . ; [t]he individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . . ; [t]he individual's impairment(s) prevents

---

[1] In February 2014, three weeks after the ALJ issued her decision, plaintiff weighed 327 pounds (Tr. 13). At this weight, plaintiff's BMI would be 39.8. *See* http://www.cdc.gov/healthyweight/assessing/bmi. At his height of 6'-4", plaintiff would be considered to be obese at 247 pounds. *Id.*

him or her from doing past relevant work and other work that exists in significant numbers in the national economy."). Further,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (emphasis added).

In the present case, there is no indication in the record that the ALJ gave any consideration to plaintiff's obesity. At the hearing, the ALJ did not ask plaintiff if or how his weight affects his other symptoms or his ability to work, and in her written decision the ALJ did not mention plaintiff's obesity at all. Nor did the ALJ acknowledge that the Disability Determination Service flagged plaintiff's obesity as a severe impairment (Tr. 136). On remand, the ALJ must make specific findings as to the effect, if any, of plaintiff's obesity on his other impairments, including the degenerative disc disease and herniated discs in his lumbar spine, and on his ability to work. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates his back pain or diminishes his ability to sit, stand, walk, or concentrate. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

The ALJ's RFC assessment of plaintiff is also flawed because it did not include any consideration of possible side effects of plaintiff's medications. During the relevant time frame,

plaintiff was prescribed a number of medications, including Taradol, Tramadol, Vicodin, Amitriptyline, Oxydcodone, and Hydrocodone (Tr. 134, 303, 336, 354).[2] Some of these medications have common side effects, including insomnia, drowsiness, sleepiness, irritability, tiredness, trouble concentrating, and dizziness. *See* http://www.drugs.com/sfx/[drug name]-side-effects.html. Plaintiff listed a number of these side effects on his function report (Tr. 303), as did his wife on her third party function report (Tr. 292). At the hearing plaintiff testified to his irritability and difficulty sleeping (Tr. 106, 114).

        The ALJ neglected to develop the record as to this medically and vocationally significant issue. The ALJ asked plaintiff no questions about his medications or side effects and she made no mention of this issue in her written decision. The Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must (1) determine which medications plaintiff was taking during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects, if any, and adjust her findings as appropriate regarding plaintiff's RFC, and (3) incorporate these findings in proper hypothetical questions to the VE to determine whether work exists in significant

---

[2] At the hearing, plaintiff testified that he was taking "[n]o other medications at this time" besides Toradol (Tr. 103-105). However, since plaintiff was taking this and the other medications at various times, the ALJ must determine which medications plaintiff was taking at which times during the relevant period and make findings as to all of the medications' side effects, if any.

numbers that can be performed by a person such as plaintiff experiencing such side effects.

On remand, the ALJ must also reassess plaintiff's testimony and written submissions because her reasons for finding plaintiff "not entirely credible" (Tr. 85) and "only partially credible" (Tr. 86) are unsupported by the record. While "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, . . . [n]evertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In the present case, plaintiff testified that he has pain in his right hip, lower back, right ankle and right foot (Tr. 103); that his pain level is at "[s]even most days" (on a 10-point scale) and no position or exercise makes it better (Tr. 104); that the pain is made worse with walking, pushing, pulling, and carrying (Tr. 104-105); that physical therapy "just exacerbated the injury" (Tr. 105); that he sleeps poorly because of pain (Tr. 106); that he can drive if he has to, but he tries to limit his driving to under 20 miles per week (Tr. 107); that he can make himself something to eat but he tries to "do it extremely quick" (Tr. 108); that he tries to do dishes but cannot finish and does no house-cleaning or yard work or grocery shopping (Tr. 108-109); that he spends his time reading in a reclined position and engages in no social activities (Tr. 109); and that he can sit for 30-45 minutes before having to change positions, can stand for three to five minutes, walk one block, and lift 10-15 pounds (Tr. 111-12). In response to questions from his attorney, plaintiff testified that while he could lift 10-15 pounds, he could not do so repetitively because his back would cramp up (Tr. 116); that during an eight-hour day he spends about three hours in a recliner to elevate his foot and get the pressure off his lower back (Tr. 117); that he had a hard time walking from the parking lot into the building where the hearing was being held (Tr. 117-18); and that if he stands longer than

6

two or three minutes his back tightens and he gets a sharp stabbing pain in his right hip (Tr. 118-19).

In his function report, plaintiff indicated he has severe pain most days (Tr. 296); that pain prevents him from sleeping well ("if I can rest for 1 to 2 hours that was a good night") (Tr. 297); that he has "problems with shoes, pants, socks" and "reaching feet" but can meet his personal care needs (Tr. 297-98); that he can make a simple meal for himself but needs help doing dishes and yard work (Tr. 298); that he goes outside three or four times per week and can drive (Tr. 299); that he attends classes twice per week (Tr. 300); that his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, concentrate, and get along with others is affected (Tr. 301); that he can lift 5-10 pounds, walk 200 feet before having to rest for one to ten minutes, stand "for just a couple minutes," and pay attention for up to 1.5 hours (Tr. 301).

It is not clear which portions of plaintiff's statements and testimony the ALJ found to be "not entirely credible" (Tr. 85) or "only partially credible" (Tr. 86), but her explanation for this negative evaluation of plaintiff's credibility is not supported by substantial evidence. While the ALJ acknowledged that "the objective medical evidence undoubtedly confirms the etiology of his back disorder,"[3] she proceeded to dismiss his testimony for entirely unpersuasive reasons. The ALJ pointed first to the fact that plaintiff "received unemployment insurance benefits in the 3rd quarter

---

[3] The ALJ noted that "MRI testing performed on June 8, 2011, revealed diffuse disc bulge with moderate to severe canal stenosis and foraminal narrowing at L3-L4, and broad based disc bulge containing annular tear causing moderate to severe canal stenosis and foraminal narrowing bilaterally" and that a "second lumbar MRI test, performed on January 3, 2012, demonstrated mild disc protrusion at L3-L4 with mild spinal canal stenosis, and diffuse disc protrusion at L4-L5, with moderate spinal canal and neural foraminal stenosis" (Tr. 83). The ALJ neglected to note that x-rays in July 2013 showed "partial sacralization of the left portion of L5 . . . [and] degenerative changes in the adjacent S1 joint" (Tr. 595). Evidence from May through July 2014, submitted after the ALJ's decision, showed disc herniations at L5-S1 (Tr. 19) and L3-L4 (Tr. 29) and other "degenerative changes" (Tr. 45-46).

7

of 2013," meaning plaintiff "represented himself as being ready, willing and able to work" (Tr. 80). "This is contrary to his underlying application and appeal [and] . . . bear[s] negatively on the issue of the claimant's credibility." *Id.* However, as the ALJ noted, the Michigan Employment Security Act, Mich. Comp. Laws § 421.28(1)(a), requires that an applicant "be available to perform suitable full-time work." The Social Security Act entitles an applicant to disability insurance benefits under an entirely different standard. When, as here, plaintiff is unable to perform his past work, it is the government's burden to prove that other jobs exist in significant numbers which he can perform despite his mental and physical impairments. There is no necessary contradiction between an applicant being willing to do "suitable" work and the applicant nonetheless being entitled to disability benefits if work the applicant is able to perform does not exist in significant numbers. The ALJ's suggestion that plaintiff lacks credibility because he filed the two applications simultaneously is illogical. Further, plaintiff and his wife openly acknowledged in their February 2012 function reports that plaintiff was "looking for work" (Tr. 286, 297). Willingness to work does not equate with ability to work or with the existence of jobs plaintiff can perform.

The ALJ next discounted plaintiff's credibility on the grounds that "his symptoms are managed with non-narcotic pain medication" (Tr. 85). This statement is misleading. As noted, plaintiff has been prescribed narcotic pain medications at various times during the relevant period. For example, in June 2011 plaintiff was prescribed Oxycodone-acetaminophen (Tr. 355) and records from August 2011 state plaintiff "takes OxyContin when he cannot bear the pain anymore. The severity sometimes goes up to 12/10" (Tr. 354). Plaintiff testified he that has been on Vicodin as well, but that he last took narcotics in January 2013 (Tr. 104). The ALJ did not ask plaintiff why he does not take narcotics. Nor did she acknowledge the statement of plaintiff's treating physician,

Dr. Beydoun, in July 2013 that plaintiff "cannot tolerate Oxycodone or Dilaudid or morphine" (Tr. 587). If plaintiff "cannot tolerate" narcotics, he cannot be faulted for not taking them. Nor does the ALJ cite evidence in the record suggesting that plaintiff obtains significant relief from non-narcotic pain medication.

The ALJ next discounted plaintiff's credibility on the grounds that plaintiff "declined surgical intervention despite Dr. Lee's suggestion it would provide at least some degree of relief" (Tr. 85). The ALJ noted that while "Dr. Lee recommended the claimant for L3-L5 laminectomy, [he] advised that he should not expect a 100% recovery because his spinal canal stenosis was due to a combination of disc protrusion and ligamentous hypertrophy" (Tr. 84, citing Tr. 348). The ALJ neglected to note that in the same report Dr. Lee went on to summarize the surgery's risks and plaintiff's reason for not wanting to proceed at that time. In pertinent part, Dr. Lee wrote:

> ASSESSMENT AND PLAN: 44-year-old male with a lumbar stenosis with now worsening neuropathic pain. L3-L5 laminectomy was recommended to him. However, because of this component of neuropathic pain, he was advised that he would not likely totally recover. The main goal of surgery would be in fact to preserve his function and hope that he will get pain relief in addition. Risks and benefits of the procedure was discussed with him, which include, but are not allowing [sic], to bleeding, infection, CSF leak, neurologic deficits, heart attack, stroke, coma, blindness, or even death. He understands this and would like to proceed; however, because of his financial situation, he is unable to schedule surgery at this time. . . .

(Tr. 348.) In light of the limited relief the surgery would likely afford, the risks involved, and plaintiff's financial situation, the ALJ had no reasonable basis for devaluing plaintiff's credibility on the grounds that he chose not to undergo this surgery.[4]

---

[4] Records submitted after the ALJ issued her decision show that plaintiff did in fact undergo "left L3-L4 laminotomy and microdiscectomy" in July 2014 (Tr. 35, 51).

The ALJ next discounted plaintiff's credibility because of "several contractions [sic] between his subjective reports of symptoms and limitations" (Tr. 86). For support, the ALJ pointed to plaintiff's testimony "that he was last hospitalized for 'pain' in April of 2012; however, medical records demonstrate that he was treated for a kidney stone" (Tr. 86). At the hearing, the ALJ asked: "You haven't been to the emergency room for pain any time recently?" To which plaintiff responded: "I think April [2012] was the last time" (Tr. 106). There is no inaccuracy or contradiction here. The records show that in April 2012 plaintiff sought emergency room treatment for severe left flank pain, and he was diagnosed with having a kidney stone (Tr. 400-02).

The ALJ also faulted plaintiff for "not receiv[ing] emergency room treatment or attempt[ing] physical therapy for back pain in several years" (Tr. 86). Since plaintiff did not testify untruthfully, it is not clear why the ALJ viewed these points as diminishing plaintiff's credibility. The issue is whether plaintiff's pain prevents him from working full-time, not whether it compelled him to seek ER treatment. As for physical therapy, plaintiff testified that he had tried it but that it had "exacerbated the injury" (Tr. 105, 119), a point that is noted in the medical records (Tr. 333).

The ALJ also discounted plaintiff's credibility because "he conceded that he has been able to sit through 1-hour college classes several times per week over the course of the last 3 years" and "[h]e was also able to complete a work-study program, in which he worked up to 15 hours per week (in addition to his regular course load)" (Tr. 86). The ALJ provided no record citations for these statements. The evidence of which the Court is aware, which the ALJ did not acknowledge, is that plaintiff testified he could sit through a one-hour class but would then "leave campus actually" and drive home, which took five to eight minutes (Tr. 111-12, 115). It appears that plaintiff's "regular course load" consisted of attending classes part-time two days per week (Tr. 100,

10

286, 297). And while the ALJ characterized the work study experience a taking "up to 15 hours per week," plaintiff testified he worked at that job, "basically diagnos[ing] [computer] problems in the lab," "five to 15 hours a week" (Tr. 98-99).

The ALJ next found inconsistencies between plaintiff's testimony and his statements to Dr. Bray: "the claimant advised Dr. Bray that he was unable to drive, cook, do yard work, shop, or run errands; however, he testified that he is still able to drive, prepare meals, perform light housework, and lift 10-15 pounds" (Tr. 86). A comparison between plaintiff's testimony (in December 2013) and his statements to Dr. Bray (in May 2012) reveals no inconsistencies. Plaintiff indicated on both occasions that he does drive, that he does not go shopping or do yard work, and that he does, or tries to do, some minimal housekeeping (Tr. 107-109, 578). Dr. Bray says nothing about plaintiff's lifting ability, so it is unclear why the ALJ believed plaintiff's testimony on this point (Tr. 112, 116) was inconsistent with his statements to Dr. Bray.

Finally, the ALJ appears to have discounted plaintiff's credibility on the grounds that "[t]reatment records from Dr. Beydoun also reflect that he suffered a minor hip injury to his right hip in July 2013 while mowing his lawn" (Tr. 86). Plaintiff's claim of disabling back and leg pain predates this injury by two years. It is not clear to the Court how the July 2013 lawn mowing incident that related to plaintiff's hip detracts from his credibility.

In sum, the ALJ's adverse credibility determination is not supported by substantial evidence. In addition to not adequately supporting this determination, the ALJ neglected to mention a number of factors which a reasonable fact-finder might find to be supportive of plaintiff's credibility, such as his work history, the consistency of his complaints to various medical care providers over time, the frequency of his visits for such care, and the fact that his physicians have

11

prescribed various treatments and medications to address his back condition, certified his need for a handicap parking sticker since August 2011 due to his back pain and back and leg weakness (Tr. 354, 483), and wrote to excuse him from jury duty in December 2013 due to his "[s]pinal stenosis, bulging disc and sever[e] back pain" (Tr. 586). On remand, the ALJ should give due consideration to all factors bearing on plaintiff's credibility.

Finally, on remand the ALJ must reconsider the weight she accords to the opinion of Dr. Edmond, which she cited in support of her RFC evaluation (Tr. 86). Dr. Edmond, who examined plaintiff in April 2012 at the request of the Disability Determination Service, expressed no opinion on any of the critical issues in this case, namely, plaintiff's pain level and his ability to sit, stand, walk, lift, and concentrate (Tr. 570-71). The ALJ must explain why she finds Dr. Edmond's report to be supportive of her finding that plaintiff can do full-time sedentary work with a sit/stand option and can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl, and would not be "off task for[] more than 10% of the workday" (Tr. 82).

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).


Dated: January 27, 2016
      Detroit, Michigan

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE